# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RODNEY WILSON, | No. 4:20-CV-02456 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| C.O. SILVERIO, *et al.*, | |
| Defendants. | |

## MEMORANDUM OPINION

### JUNE 1, 2022

Plaintiff Rodney Wilson, who was previously a pretrial detainee at Monroe County Correctional Facility (MCCF) during times relevant to this lawsuit, filed this *pro se* Section 1983[1] action in December 2020.  Wilson brings excessive force claims against several MCCF correctional officers, alleging that he was repeatedly assaulted while in pretrial detention.  Presently pending is Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.  Because Wilson fails to carry his summary judgment burden on his constitutional tort claims, the Court will grant Defendants' Rule 56 motion.

---

[1]  42 U.S.C. § 1983.  Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials.  The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law.  *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).

## I.    FACTUAL BACKGROUND[2]

Wilson arrived at MCCF in May 2020, after a magisterial district judge

denied bail on his pending state criminal charges.[3]  According to Wilson, on three

separate occasions in 2020, he was subjected to excessive force by MCCF

correctional officers in violation of his Fourteenth Amendment rights.[4]

Wilson's allegations are serious, albeit abrupt.  He claims that, upon arrival

to MCCF,[5] he was beaten and physically assaulted in his cell by defendants

Sergeant Parez, Correctional Officer Keida, Correctional Officer Cabona, and two

unidentified officers.[6]  He next alleges that, on November 18, 2020, defendant

---

[2]   Local Rule of Court 56.1 requires that a motion for summary judgment be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried."  LOCAL RULE OF COURT 56.1.  A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried.  *Id.*  Defendants filed their statement of material facts, (Doc. 25), but Wilson failed to respond to that statement.  Accordingly, the Court will deem admitted the facts in Defendants' Rule 56.1 statement unless they are clearly contradicted by the record.  *See* LOCAL RULE OF COURT 56.1.

[3]   Doc. 25 at 2 ¶¶ 4, 5, 7.

[4]   Doc. 1 at 5.

[5]   There is some discrepancy as to when Wilson first came to MCCF and thus when the first alleged incident occurred.  Wilson claims he arrived at MCCF on May 16, 2020, and that this is when the first assault took place.  *See id.*  In support, he submitted a docket sheet from magisterial district court that shows that he was confined at MCCF from May 16 to May 18, 2020 (before being committed again on May 21, 2020).  *See* Doc. 27-1 at 3.  Defendants claim that the incident occurred on May 21, 2020, and provide magisterial district court records showing that Wilson was committed to MCCF that day.  *See* Doc. 25 at 19-20.  The exact date of the alleged event is immaterial, however, and the Court will refer to it hereafter simply as the "May 2020" incident.

[6]   Doc. 1 at 5.

2

Correctional Officer Silverio[7] "smacked and slammed" him in the shower.[8]

Wilson lastly avers that, on December 2, 2020, he was "jumped" by Silverio,

Keida, and defendant Correctional Officer Lee.[9]  He claims that Silverio hit him

with his knee "6-8 times" in the ribs, and that Silverio, Keida, and Lee punched

him in the mouth and face.[10]  According to Wilson, he suffered broken ribs and

dental injuries from this final attack.[11]

Wilson filed suit in late December 2020.  He sued Silverio, Keida, Cabona,

Lee, and Parez, as well as two other supervisory defendants who were later

dismissed for lack of personal involvement.[12]  The remaining Defendants now

move for summary judgment on all claims.[13]  Defendants' Rule 56 motion is fully

briefed and ripe for disposition.

## II.   STANDARD OF REVIEW

"One of the principal purposes of the summary judgment rule is to isolate

and dispose of factually unsupported claims or defenses."[14]  Summary judgment is

appropriate where "the movant shows that there is no genuine dispute as to any

---

[7]   Wilson identifies this defendant as "Silverio" and "Saviro" at different places in his complaint. *See id.* at 1, 3, 5.  Defendants do not address this inconsistency or provide clarification.  The Court will use "Silverio"—the spelling that appears in the caption and in the defendant-identification section of Wilson's complaint.  *See id.* at 1, 3.

[8]   *Id.* at 5.

[9]   *Id.*

[10]   *Id.*

[11]   *Id.* at 5, 6.

[12]   *See* Doc. 15.

[13]   Doc. 24.

[14]   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

material fact and the movant is entitled to judgment as a matter of law."[15]  Material

facts are those "that could alter the outcome" of the litigation, and "disputes are

'genuine' if evidence exists from which a rational person could conclude that the

position of the person with the burden of proof on the disputed issue is correct."[16]

At the Rule 56 stage, the Court's function is not to "weigh the evidence and

determine the truth of the matter" but rather "to determine whether there is a

genuine issue for trial."[17]  The Court must view the facts and evidence presented

"in the light most favorable to the non-moving party" and must "draw all

reasonable inferences in that party's favor."[18]  This evidence, however, must be

adequate—as a matter of law—to sustain a judgment in favor of the nonmoving

party on the claim or claims at issue.[19]  A "scintilla of evidence" supporting the

nonmovant's position is insufficient; "there must be evidence on which the jury

could reasonably find for the [nonmovant]."[20]  Succinctly stated, summary

judgment is "put up or shut up time" for the nonmoving party.[21]

---

[15]  FED. R. CIV. P. 56(a).
[16]  *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 262 (3d Cir. 2010) (*quoting Clark v. Modern Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993)).
[17]  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).
[18]  *Thomas v. Cumberland County*, 749 F.3d 217, 222 (3d Cir. 2014).
[19]  *Liberty Lobby*, 477 U.S. at 250-57; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-89 (1986).
[20]  *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 192 (3d Cir. 2015) (quoting *Liberty Lobby*, 477 U.S. at 252) (alteration in original).
[21]  *Daubert v. NRA Grp., LLC*, 861 F.3d 382, 391 (3d Cir. 2017) (quoting *Berkeley Inv. Grp. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006)).

## III.   DISCUSSION

In their Rule 56 motion, Defendants contend that Wilson did not exhaust his administrative remedies as to any of his excessive force claims.  They also argue that Wilson has failed to identify evidence that Defendants used unreasonable force and that, even if he had proffered such evidence, Defendants' conduct is shielded by qualified immunity.  The Court need only address Defendants' first two arguments.

### A.     Administrative Exhaustion

The Prison Litigation Reform Act of 1995 (PLRA)[22] requires prisoners to exhaust available administrative remedies before suing prison officials for alleged constitutional violations.[23]  Proper exhaustion is mandatory, even if the inmate is seeking relief—like monetary damages—that cannot be granted by the administrative system.[24]  The exhaustion process a prisoner must follow is governed by the contours of the prison grievance system in effect where the inmate is incarcerated.[25]

Defendants provide portions of MCCF's Inmate Handbook and an affidavit from Warden Garry Haidle, which together set out the prison's grievance process. If informal resolution with the Housing Unit Officer does not resolve the problem,

---

[22]   42 U.S.C. § 1997e *et seq.*
[23]   *See* 42 U.S.C. § 1997e(a); *Ross v. Blake*, 578 U.S. 632, 639, 642 (2016) (explaining that only "available" remedies must be exhausted).
[24]   *Woodford v. Ngo*, 548 U.S. 81, 85 (2006).
[25]   *Jones v. Bock*, 549 U.S. 199, 218 (2007); *see also Woodford*, 548 U.S. at 90-91.

the first step is to file a grievance form with the Housing Unit Counselor.[26] The

Housing Unit Counselor will either handle the grievance or forward it to the

appropriate Unit Commander.[27] If the Unit Commander cannot "settle" the

grievance, the Deputy Warden will respond.[28] The last level of review is with the

Warden, who is "the final step in the grievance procedure."[29]

Neither Warden Haidle's affidavit nor the Inmate Handbook establishes

exactly how many levels of grievance review exist at MCCF. The Inmate

Handbook states that "[a] grievance includes *at least* one level of appeal."[30]

Warden Haidle, in his affidavit, attests that there are "several" levels of review, but

never specifies how many levels exist.[31] What is clear, however, is that review by

the Warden is the final step in MCCF's grievance process.[32]

Defendants maintain that Wilson failed to fully exhaust any of his

grievances. But Wilson submitted copies of two grievances, the second of which

disproves Defendants' contention. The first grievance has portions that are

illegible, does not appear to be signed by Wilson, and has no response from MCCF

officials.[33] The second grievance, however, appears to be fully exhausted. In it,

---

[26]   Doc. 25 at 22.
[27]   *Id.* at 22-23.
[28]   *Id.* at 23.
[29]   *Id.*
[30]   *Id.* at 22 (emphasis added).
[31]   *See id.* at 13.
[32]   *See* Doc. 25 at 14, 23.
[33]   *See* Doc. 27-1 at 1.

Wilson claims that in May 2020 he was "beat[e]n" by officers on second shift and

on November 18, 2020, he was brought to booking where Silverio "took [his] head

and slam[m]ed it on the shower wall."[34]  In the relief requested, Wilson stated, "I

want a class action law suite [sic]."[35]

The first response is by a "Sgt. Eyer," who on December 10, 2020,

responded by simply writing, "[C]ontact your attorney."[36]  Wilson appealed on

December 23, 2020, and additionally requested compensatory and punitive

damages from each officer who assaulted him.[37]  Warden Haidle responded, "If

you feel this necessary to proceed, contact [*illegible*] your legal paperwork with

your attorney."[38]  Wilson, therefore, fully exhausted his claims as to the May 2020

and November 2020 incidents, as his grievance was rejected on the merits at the

highest level of review.[39]

---

[34]   *Id.* at 2.
[35]   *Id.*
[36]   *Id.*
[37]   *Id.*
[38]   *Id.*
[39]   It is immaterial that Wilson did not specifically identify all the at-fault correctional officers in his grievance.  First, neither MCCF's Inmate Handbook nor the grievance form itself contains a defendant identification requirement.  Second, if MCCF officials wanted clarification as to what correctional officers were involved in the alleged assaults, those grievance officials were in the best position to have Wilson provide this information and to investigate his claims. Instead, they chose to reject his grievance on the merits at the highest level. *See Rinaldi v. United States*, 904 F.3d 257, 271-72 (3d Cir. 2018) ("[W]here the prison has chosen to forgo a rejection on procedural grounds and has elected to research, analyze, and deny a claim on the merits, both the purposes of exhaustion—and exhaustion itself—are satisfied.").

### B.    Excessive Force Claims

Defendants next argue that Wilson cannot establish or point to any proof that

excessive force was used against him.  Here is where Wilson's claims fall well

short of the mark.  Wilson has not provided or identified any record evidence that

would support his claims of excessive force.  He has not, for example, proffered a

declaration or affidavit, medical records, witness statements, or any other evidence

that could sustain a verdict in his favor.

Wilson's brief in opposition to Defendants' motion for summary judgment is

a single page.[40]  It simply reiterates his allegations of assault, and baldly asserts

that his "statements and claim[s] are true."[41]  This Wilson cannot do.  At summary

judgment, "the non-moving party must oppose the motion and, in doing so, may

not rest upon the mere allegations or denials of his pleadings but, instead, must set

forth specific facts showing that there is a genuine issue for trial.  Bare assertions,

conclusory allegations, or suspicions will not suffice."[42]  Although Wilson

included copies of his various prison grievances and complaints,[43] these documents

likewise contain only allegations and do not provide evidence from which a

reasonable trier of fact could find for Wilson.

---

[40]   *See* Doc. 27.
[41]   *See id.*
[42]   *Jutrowski v. Township of Riverdale*, 904 F.3d 280, 288-89 (3d Cir. 2018) (alteration omitted) (quoting *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 268-69 (3d Cir. 2014)).
[43]   *See* Doc. 27-1.

The Court further notes that, as Wilson has completely failed to comply with Local Rule 56.1, Defendants' assertions of fact regarding the May 2020 and November 2020 incidents—the only exhausted claims—are deemed admitted.[44] Upon admission of these material facts, it follows that Wilson cannot, as a matter of law, succeed on his Fourteenth Amendment excessive force claims.  Thus, because Wilson has failed to establish that there is a genuine issue for trial, the Court is constrained to grant Defendants' motion for summary judgment as to Wilson's Section 1983 claims.

## IV.   CONCLUSION

Based on the foregoing, the Court will grant Defendants' motion (Doc. 24) for summary judgment in its entirety.  An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[44]   *See* Doc. 25 at 4-7, 9 ¶¶ 11-35, 47-49; Local Rule of Court 56.1.